**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Freedom Mortgage Corporation,<br><br>                              Plaintiff,<br><br>              -v-<br><br>Juliano Petriello, Frank Petriello, and Joseph H. Levine MD PC,<br><br>                              Defendants. | 2:22-cv-7310<br>(NJC) (JMW) |

<u>**MEMORANDUM AND ORDER**</u>

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Freedom Mortgage Corporation ("Freedom Mortgage" or "Plaintiff") brings this diversity action against Juliano Petriello and Frank Petriello (the "Borrowers") and Joseph H. Levine MD PC (collectively, "Defendants") pursuant to Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL"), RPAPL § 1301 et seq., to foreclose on a mortgage encumbering the property located at 61 Pennsylvania Avenue, Medford, NY 11763 (the "Subject Property"). (Compl. ¶ 1, ECF No. 1.)

Freedom Mortgage moves under Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for default judgment against Frank Petriello and Joseph H. Levine MD PC, and under Rule 56, Fed. R. Civ. P., for summary judgment against Juliano Petriello. (Second Mot. Default J., ECF No. 38; Mot. Summ. J., ECF No. 40.) In its Motion for Summary Judgment, Freedom Mortgage also moves for an order that strikes Defendant Juliano Petriello's Answer, Affirmative Defenses, and Counterclaims (ECF No. 8), enters a judgment of foreclosure of sale, dismisses "John Does #1" through "John Does #10" and amends the case caption to reflect that

dismissal,[1] and appoints Stephanie S. Goldstone as Referee to sell the Subject Property and disburse the funds from the sale. (Summ. J. Mem. at 1, 26–27, ECF No. 40-2; Proposed Summ. J. Order at 9.)[2]

For the reasons set forth below, Freedom Mortgage's Second Motion for Default Judgment against Frank Petriello and Joseph H. Levine MD PC is granted in part and denied in part. Default judgment with respect to Frank Petriello is granted on the issue of liability and is granted in part and denied in part with leave to renew with respect to damages and other relief. Default judgment is denied with respect to Joseph H. Levine MD PC with leave to renew following sufficient service of the Summons and Complaint on Joseph H. Levine MD PC. Freedom Mortgage's Motion for Summary Judgment against Juliano Petriello is granted on the issue of liability and is granted in part and denied in part with leave to renew with respect to damages and other relief. Any renewed motion for default judgment as to damages and other relief against Frank Petriello, renewed motion for default judgment against Joesph H. Levine MD PC, or renewed motion for summary judgment as to damages and other relief against Juliano Petriello is referred to Magistrate Judge James M. Wicks for a written report and recommendation. Finally, in light of my ruling on Freedom Mortgage's Motion for Summary

---

[1] "John Does #1" through "John Does #10" were not named as Defendants in the Complaint and were not otherwise joined as parties to this action. (*See* Compl.) The first mention of "John Does #1" through "John Does #10" is in Freedom Mortgage's Motion for Summary Judgment. (*See* Mot. Summ. J. at 1.) Accordingly, Freedom Mortgage's request to dismiss "John Does #1" through "John Does #10" and amend the case caption to reflect their dismissal is denied.

[2] In its Motion for Summary Judgment, Freedom Mortgage also requests the entry of an order of default judgment against Frank Petriello and Joseph H. Levine MD PC. (Proposed Summ. J. Order at 2, ECF No. 40-1; Summ. J. Mem. at 1, ECF 40-2.) Because I grant Freedom Mortgage's Second Motion for Default Judgment, which seeks the same relief, this request in the Motion for Summary Judgment is dismissed as moot.

Judgment, the motion to strike Juliano Petriello's Answer, Affirmative Defenses, and Counterclaims is dismissed as moot.

## JURISDICTION

As discussed in my November 16, 2023 Order, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000. (Elec. Order, Nov. 16, 2023.)

## FACTUAL BACKGROUND

On January 27, 2016, the Borrowers executed a Note in favor of "East Coast Capital Corp., a Corporation" ("East Coast Capital" or "Lender"). (Pl.'s Statement Material Facts ("Pl.'s Statement") ¶ 1, ECF No. 40-4; Resp. Pl.'s Statement Material Facts ("Resp. Statement") ¶ 1, ECF No. 45 at 7–8; *see also* Note, ECF No. 40-6.) The Note requires the Borrowers to pay East Coast Capital "and its successors and assigns" $412,338.00 plus interest at a rate of 4.25% per year on the unpaid principal balance. (Note at 1.)

Borrowers must make payments of $2,043.21 on the first day of each month beginning on March 1, 2016, with repayment of the full loan due by February 2046. (Note at 1.) Additionally, in the event the Borrowers fail to pay a monthly payment in full within 15 calendar days after the payment due date, the Lender may collect a late charge of 4.0% of the overdue amount. (*Id.*) The Note's "Default" section provides that if the Borrowers fail to pay any monthly payment, then the "Lender may[,] except as limited by regulations of the Secretary in the case of payment defaults[,] require immediate payment in full of the principal balance remaining due and all accrued interest." (*Id.* at 1–2.) If the Lender invokes the default terms of the Note, the Lender may also require the Borrowers to pay the costs and expenses, including attorneys' fees, for enforcing the Note. (*Id.* at 2.)

3

On the day in which the Borrowers executed the Note—January 27, 2016—the Borrowers also executed a Mortgage on the Subject Property for the same amount as the loan governed by the Note in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as mortgagee and as nominee for East Coast Capital. (Pl.'s Statement ¶ 2; Resp. Statement ¶ 2; Mortgage at 4, ECF No. 40-7.) The Mortgage was recorded with the Suffolk County Clerk on February 23, 2016. (Pl.'s Statement ¶ 3; Mortgage at 2.) Similar to the terms of the Note, the terms of the Mortgage provides that the "Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by" the Mortgage in the event the Borrowers default. (Mortgage at 8.)

On January 29, 2020, MERS assigned the Mortgage to Freedom Mortgage. (Assignment Mortgage at 4, ECF No. 40-8.) The assignment was recorded with the Suffolk County Clerk on February 10, 2020. (*Id.* at 1.)

The Borrowers defaulted on the Note and Mortgage by failing to make the monthly payment due on October 1, 2019, and all subsequent payments, interest, and fees. (Pl.'s Statement ¶ 4; Resp. Statement ¶ 4; *see also* ECF No. 40-9; Breach Ltrs., ECF No. 40-11.) According to Freedom Mortgage, the Borrowers owe: (1) $532,637.04, which includes the principal due, interest at the Note rate of 4.25%, taxes, insurance, and other fees from September 1, 2019 to December 31, 2023; (2) additional interest at the Note rate of 4.25% incurred from January 1, 2024 until the entry of judgment; and (3) "any advances" Freedom Mortgage "made for taxes, insurance, principal, and interest, and any other charges due to prior mortgages or to maintain the property pending consummation of this foreclosure sale, not previously included in the computation." (Proposed Summ. J. Order at 6; *see also* Tracy Aff. ¶¶ 15–16, ECF No. 40-3; Note at 1.)

4

Following the Borrowers' default, Freedom Mortgage sent notices to the Borrowers at the Subject Property by certified mail and first class mail under RPAPL § 1304, which requires the plaintiff to have served a notice containing specific language "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage" at least 90 days before commencing a foreclosure action ("90-day notice"). RPAPL § 1304(2); Tracy Aff. ¶ 11; *id.* Ex. 6 at 40, 50, 60, 70[3]; Pl.'s Statement ¶ 6; Resp. Statement ¶ 6. There is contradictory evidence in the record regarding the exact date Freedom Mortgage mailed the 90-day notices. Freedom Mortgage provided the affidavit of its employee, Erica D. Tracy ("Tracy"), a "Fed. Specialist II," ("Tracy Affidavit") in which Tracy affirms that the 90-day notices "were served via certified mail and also by first class mail on May 24, 2022." (Tracy Aff. ¶¶ 1, 11.) The Tracy Affidavit attaches copies of the 90-day notices. (*Id.* at 40–79.) Four notices in total were mailed: a notice was sent to each Borrower by certified mail and first class mail. (*Id.*) The copies of the notices sent by certified mail to each Borrower are stamped with a USPS certified mail barcode and tracking ID. (*Id.* at 50, 70.) Screenshots of the USPS tracking updates for these two notices are also attached to the Tracy Affidavit (*id.* at 83–87) and show that the notices sent by certified mail were in fact mailed on May 31, 2022 (*id.* at 84, 87).

After mailing the 90-day notices, Freedom Mortgage filed notice with the Superintendent of the New York State Department of Financial Services on May 31, 2022, as required by RPAPL § 1306. (Tracy Aff. ¶ 12; Filing Statements, ECF No. 40-10; Pl.'s Statement ¶ 7; Resp. Statement ¶ 7.) According to the Filing Statements, Freedom Mortgage informed the New York

---

[3] Page citations for the Tracy Affidavit rely on the ECF pagination.

Department of Financial Services that it mailed the 90-day notices on May 25, 2025. (Filing Statements.) I understand this to mean that Freedom Mortgage sent the 90-day notice by first class mail on that date.

## PROCEDURAL HISTORY

### I.    The Summons and Complaint

On December 2, 2022, Freedom Mortgage filed this diversity action to foreclose on a mortgage encumbering the Subject Property against the Borrowers and Joseph H. Levine MD PC pursuant to Article 13 of the RPAPL. (Compl. ¶ 1.) The Complaint identifies Joseph H. Levine MD PC as a Defendant "named by virtue of [it] being a possible subordinate lien holder." (ECF No. 31-2 ¶ 9.) Also on December 2, 2022, Freedom Mortgage filed a Notice of Pendency (Not. Pendency, ECF No. 3) and a Certificate of Merit (Cert. Merit, ECF No. 4) on the docket for this action. Summons were issued as to all Defendants on December 12, 2022. (ECF No. 7.) On January 12, 2023, Freedom Mortgage filed the Notice of Pendency with the Suffolk County Clerk's Office. (Zamenhof Default J. Decl. ¶ 11, ECF No. 38-3; *see also* ECF No. 38-10.)

On January 19, 2023, Freedom Mortgage filed affidavits of service that were executed on December 28, 2023 by process server Thomas McGinley ("McGinley"), and an affidavit of mailing that was executed on December 27, 2022 by Marty Lapidus ("Lapidus"). (ECF No. 10.) McGinley affirms that he personally served Frank Petriello on December 16, 2022 at the Subject Property. (ECF No. 10 at 3.) McGinley also affirms that he served Juliano Petriello on December 16, 2022 by serving Frank Petriello, a "SUITABLE AGE PERSON," at the Subject Property. (*Id.* at 1.) McGinley attests that Frank Petriello informed him that the Subject Property was Juliano Petriello's "dwelling/usual place of abode." (*See id.*) Lapidus affirms that he mailed

Juliano Petriello the Summons, Complaint, and Certificate of Merit by first class mail on December 27, 2022. (*Id.* at 2.)

On July 6, 2023, Freedom Mortgage filed an affidavit of service that was executed on March 7, 2023 by process server Sean Cunningham ("Cunningham"), and an affidavit of mailing that was executed on December 27, 2022 by Lapidus. (ECF No. 25.) Cunningham attests to serving Joesph H. Levine MD PC with the Summons, Complaint, Certificate of Merit, and "Homeowner's Foreclosure Notice" on February 28, 2023 at 34 Forest Drive, Port Washington, New York. (*Id.* at 1.) Lapidus also affirms that he mailed the Summons, Complaint, and Certificate of Merit by first class mail on March 7, 2023 to Joseph H. Levine MD PC at 34 Forest Drive, Port Washington, New York 11050. (*Id.* at 2.)

## II.    Motion for Default Judgment as to Frank Petriello and Joesph H. Levine MD PC

On May 25, 2023, Freedom Mortgage filed a Request for Certificate of Default against Frank Petriello, attaching the affidavit of Christian A. Parker ("Parker"), a legal assistant employed by Freedom Mortgage's then counsel. (Request Cert. Default, ECF No. 21; Parker Aff., ECF No. 21-2.) Parker affirmed that he "conducted an online search of the Department of Defense Manpower Data Center for the Defendants, Juliano Petriello, Frank Petriello and Joseph H. Levine MD PC," and that the Status Reports retrieved by the search "indicate[d] that said Defendants are not in active military service as defined in the Servicemembers' Civil Relief Act." (Parker Aff. ¶ 2.) The Status Reports for Juliano Petriello, Frank Petriello, and Joseph Levine,[4] all dated March 23, 2023, were attached to the Parker Affidavit and indicate that the three individuals were not active duty military as of March 23, 2023 and had not been on active

---

[4] Joesph Levine, the individual, is not a Defendant in this action.

duty military within the prior 367 days. (Parker Aff. at 2, 4, 6.) On March 31, 2023, the Clerk of Court entered a Certificate of Default against Frank Petriello. (First Cert. Default, ECF No. 22.)

On October 2, 2023, Freedom Mortgage filed a Request for Certificate of Default against Frank Petriello[5] and Joseph H. Levine MD PC, attaching a supporting declaration from its counsel, Alex Zamenhof ("Zamenhof"), and the affidavit of paralegal Andreia Mace ("Mace"). (Second Request Cert. Default, ECF No. 31; Zamenhof Default Cert. Decl., ECF No 31-2; Mace Aff., ECF No. 31-5.) Mace affirms that she "conducted a search of the Department of Defense Manpower Data Center" for each of the three Defendants, and that the resulting Status Reports are attached to her affidavit and indicate that none of the Defendants are involved in active military service. (Mace Aff. at 1.) The Status Reports attached to the Mace Affidavit, all dated October 2, 2023, indicate the Defendants are not currently on active duty and have not been on active duty military within the prior 367 days. (*Id.* at 2, 4, 6, 8, 10, 12.)[6] On October 11, 2023, the Clerk of Court entered a Certificate of Default against Frank Petriello and Joseph H. Levine MD PC. (Second Cert. Default, ECF No. 32.)

On November 6, 2023, Freedom Mortgage filed its First Motion for Default Judgment against Frank Petriello and Joseph H. Levine MD PC, attaching the affidavit of Angela D. Roberts, a "Fed. Specialist II" with Freedom Mortgage. (First Mot. Default J., ECF No. 35; Roberts Aff., ECF No. 35-3.) On December 1, 2023, I denied the First Motion for Default

---

[5] Freedom Mortgage's submissions do not explain why it sought a second certificate default against Frank Petriello after the Clerk of Court already issued a Certificate of Default against him. (*See* First Cert. Default.)

[6] In addition to Status Reports for Juliano Petriello and Frank Petriello, the Mace Affidavit includes Status Reports for Joseph H Levine, Joseph Levine, Joesph Levine MD PC, and Joesph H Levine MD PC. (Mace Aff. at 2, 4, 6, 8, 10, 12.)

Judgment with leave to renew because the supporting memorandum of law failed to comply with the Local Rules and my Individual Rules. (Elec. Order, Dec. 1, 2023.) Freedom Mortgage subsequently filed a Second Motion for Default Judgment against Frank Petriello and Joseph H. Levine MD PC, along with a proposed order granting default judgment, a memorandum of law, and a Declaration in Support of the Motion for Second Default Judgment from Zamenhof ("Zamenhof Default Judgment Declaration"). (Second Mot. Default J.; Proposed Default Order, ECF No. 38-1; Default J. Mem., ECF No. 38-2; Zamenhof Default J. Decl.) Attached to the Zamenhof Default Judgment Declaration are following:

- Exhibit A – a copy of the Note and Allonge (ECF No. 38-4);
- Exhibit B – a copy of the recorded Mortgage and recorded Assignment of the Mortgage (ECF No. 38-5);
- Exhibit C – a copy of the Summons, RPAPL § 1320 Special Summons, and Complaint (ECF No. 38-6);
- Exhibit D – a copy of the Certificate of Merit (ECF No. 38-7.)
- Exhibit E – a copy of the Affidavits of Service of the Summons and Complaint (ECF No. 38-8)
- Exhibit F – a copy of the Affidavit of Mailing of the Summons and RPAPL § 1320 Special Summons (ECF No. 38-9);
- Exhibit G – a copy of the Notice of Pendency filed with the Suffolk County Clerk's Office (ECF No. 38-10);
- Exhibit H – Department of Defense Manpower Data Center Reports (ECF No. 38-11);
- Exhibit I – a copy of Freedom Mortgage's Request for Default against Frank Petriello and Joesph H. Levine MD PC, which was submitted to the Clerk of this Court (ECF No. 38-12);
- Exhibit J – a copy of the Certificates of Default against Frank Petriello and Joesph H. Levine MD PC (ECF No. 38-13).

Although the Zamenhof Default Judgment Declaration and memorandum of law filed in support of Freedom Mortgage's Second Motion for Default Judgment reference the Roberts Affidavit, that affidavit is not attached to either document.

Freedom Mortgage filed affidavits affirming service of the Second Motion for Default Judgment on Frank Petriello and Joseph H. Levine MD PC on December 12, 2023. (ECF No. 39.)

### III.    Motion for Summary Judgment Against Juliano Petriello

On January 4, 2023, Juliano Petriello filed his Answer, asserting twenty affirmative defenses and three counterclaims.[7] (Answer, ECF No. 8.) Freedom Mortgage filed its Answer to Juliano Petriello's counterclaims on January 20, 2023. (Counterclaims Answer, ECF No. 12.) Neither Frank Petriello nor Joesph H. Levine MD PC have responded to the Complaint.

On August 31, 2023, Freedom Mortgage filed a letter motion seeking a pre-motion conference regarding its anticipated motion for summary judgment against Juliano Petriello. (ECF No. 30.) On October 18, 2023, this action was reassigned to my docket. (Elec. Order, Oct. 18, 2023.) Juliano Petriello did not respond to Freedom Mortgage's letter motion seeking a pre-motion conference. On December 6, 2023, I granted Freedom Mortgage's motion for a pre-motion conference. (Elec. Order, Dec. 6, 2023.) The pre-motion conference was held on December 20, 2023. (Min. Entry, Dec. 20, 2023.) Thereafter, I set a briefing schedule requiring Freedom Mortgage to serve a motion for summary judgment by January 31, 2024, Juliano

---

[7] The Answer's numerical ordering of Juliano Petriello's affirmative defenses repeats some numbers and skips others. (Answer at 1–11.) The affirmative defenses the Answer asserts are: (1) "Violation of RPAPL § 1303"; (2) "RPAPL § 1304- 90 Day Notice"; (3) "Plaintiff Does Not Have a Proper Securities Interest Upon All the Property Alleged in The Tax Map ID"; (4) "Lack of Standing to Sue"; (5) "Standing" (6) "Lack of Standing; Improper/Invalid/Fraudulent Assignment"; (7) "Power of Attorney not provided for each or every assignment"; (8) "Rejection of Unverified Pleading"; (9) "Implied Covenant of Good Faith and Fair Dealing"; (10) "NY CLS Banking Law § 6-1"; (11) "Deceptive Practices Act under NY Gen. Bus. Law § 349 (h)"; (12) "Service of Process"; (13) "Unclean Hands Doctrine"; (14) "Home Ownership and Equal Protection Act"; (15) "Recording"; (16) "Laches, Waiver, Estoppel & Unclean Hands"; (17) "Deceptive Practices Act"; (18) "Preservation of Defenses"; (19) "Denial of Damages"; and (20) "Improper or No Notice of Default." (*Id.*)

Petriello to serve any opposition by February 21, 2024, and Freedom Mortgage to serve any reply by March 6, 2024. (*Id.*)

On January 29, 2024, Freedom Mortgage filed its Motion for Summary Judgment against Juliano Petriello, along with the following supporting submissions:

- a proposed order granting summary judgment (Proposed Summ. J. Order, ECF No. 40-1);
- a memorandum of law in support (Summ. J. Mem., ECF No. 40-2);
- the Affidavit of Erica D. Tracy, a Freedom Mortgage "Fed. Specialist II" (Tracy Aff.);
- a Statement of Material Facts (Pl.'s Statement); and
- a Declaration by Alex Zamenhof ("Zamenhof Summary Judgment Declaration") (Zamenhof Summ. J. Decl., ECF No. 40-5).

The following exhibits are attached to the Zamenhof Summary Judgment Declaration:

- Exhibit A – a copy of the Note (Note, ECF No. 40-6);
- Exhibit B – a copy of the recorded Mortgage (Mortgage, ECF No. 40-7);
- Exhibit C – a copy of the recorded Assignment of the Mortgage (Assignment Mortgage, ECF No. 40-8);
- Exhibit D – a copy of the 90-day pre-foreclosure notice (ECF No. 40-9);
- Exhibit E – a copy of the New York State Department of Financial Services Proof of Filing Statement (Filing Statements, ECF No. 40-10);
- Exhibit F – a copy of the breach letters (Breach Ltrs., ECF No. 40-11);
- Exhibit G – a copy of the Summons, Special Summons, and Complaint (ECF No. 40-12);
- Exhibit H – a copy of the Affidavits of Service (Affs. Serv., ECF No. 40-13);
- Exhibit I – a copy of the Answer (ECF No. 40-14);
- Exhibit J – a copy of the Affidavit of Additional Mailing (ECF No. 40-15);
- Exhibit K – Department of Defense Manpower Data Center reports (ECF No. 40-16);
- Exhibit L – a copy of Freedom Mortgage's request for certificates of default as to Frank Petriello and Joseph H. Levine MD PC filed with the Clerk of this Court (ECF No. 40-17);
- Exhibit M – a copy of the Clerk's Certificates of Default as to Frank Petriello and Joseph H. Levine MD PC (ECF No. 40-18);
- Exhibit N – Bill of Costs (ECF No. 40-19);
- Exhibit O – Declaration of Services Rendered (ECF No. 40-20);
- Exhibit P – Part 36 Fiduciary NYSCEF Eligibility List Search Results (ECF No. 40-21);
- Exhibit Q – Property Report (ECF No. 40-22).

On February 21, 2024, Juliano Petriello filed an "Affirmation in Opposition," along with his affidavit. (Defs.' Affirmation Opp'n Pl.'s Mot. Summ. J. ("Opp'n"), ECF. No. 42; J. Petriello Aff., ECF No. 42-1.) On February 28, 2024, Freedom Mortgage filed a reply declaration executed by its counsel, Zamenhof. (Reply, ECF No. 43.) On March 5, 2024, Juliano Petriello, without requesting leave as required by my individual rules, filed a sur-reply brief and a response to Freedom Mortgage's Statement of Material Facts. Sur-Reply Opp'n Pl.'s Mot. Summ. J. ("Sur-Reply"), ECF No. 45; Resp. Statement; *see also* Individual Rule 5.3.5. On March 6, 2024, Freedom Mortgage filed a letter requesting that I reject the sur-reply or, in the alternative, permit Freedom Mortgage to file a response. (ECF No. 46.) On March 8, 2024, I granted Freedom Mortgage's alternative request and permitted Freedom Mortgage to file a response to the sur-reply by March 15, 2024. (Elec. Order, Mar. 8, 2024.) Freedom Mortgage filed a timely response on March 12, 2024. (Resp. Sur-Reply, ECF No. 47.)

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022).[8] "A fact is material if it might affect the outcome of the suit under the governing law." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023), *rev'd on other grounds,* 145 S. Ct. 1020 (2025) (citing *Anderson*

---

[8] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Banes*, 593 F.3d 159, 166 (2d Cir. 2010); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-cv-1220, 2024 WL 3264125, at *2 (2d Cir. July 2, 2024). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks*, 593 F.3d at 166. A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant . . . only if we conclude that on the record presented, considered in the light most favorable to the non-movant . . . , no reasonable jury could find in the [non-movant]'s favor.")*.* If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

## II.    Default Judgment

Rule 55, Fed. R. Civ. P., sets forth a two-step process for moving for a default judgment. First, the moving party must obtain a certificate of default from the Clerk of Court "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *see also Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d

Cir. 2011); E.D.N.Y. Local R. 55.1(b), 55.2. Once the certificate of default is issued, the moving

party may apply for a default judgment either to the Clerk, if the "claim is for a sum certain or a

sum that can be made certain by computation," or the Court in all other cases. Fed. R. Civ. P.

55(b); *see also Priestley*, 647 F.3d at 505; E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the

complaint, except those relating to damages. *See Ramgoolie v. Ramgoolie*, No. 22-cv-1409, 2024

WL 4429420, at *3 (2d Cir. Oct. 7, 2024) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L.*

*Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Before "entering a default judgment, a district

court is required to determine whether the plaintiff's allegations establish the defendant's

liability as a matter of law." *Moore v. Booth*, 122 F.4th 61, 69 (2d Cir. 2024) (citing *City of New*

*York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)). "The decision to grant or

deny a default motion is left to the sound discretion of a district court." *G & G Closed Cir.*

*Events, LLC v. Clayton*, __ F. Supp. 3d __, No. 24-cv-4191, 2025 WL 1173926, at *5 (E.D.N.Y.

Apr. 23, 2025).

## III.    Foreclosure

"Under New York law, a plaintiff seeking to foreclose upon a mortgage must

demonstrate 'the existence of the mortgage and mortgage note, ownership of the mortgage, and

the defendant's default in payment' on the loan secured by the mortgage." *Windward Bora LLC*

*v. Valente*, No. 18-cv-4302, 2019 WL 3872853, at *3 (E.D.N.Y. July 16, 2019) (quoting

*Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018)). A plaintiff

"establishes a prima facie entitlement to judgment once it submits the mortgage, the unpaid note

and evidence of the default." *Id.* "The burden then shifts to the defendant to raise a triable issue

of fact, including with respect to any alleged defenses or counterclaims." *Bent*, 321 F. Supp. 3d at 414–15 (citing *Fleet Nat'l Bank v. Olasov*, 793 N.Y.S.2d 52, 52 (2005)).

"To prevail in a mortgage foreclosure action under New York law, the plaintiff must satisfy the common law elements and the statutory requirements set forth in Article 13 of the [RPAPL]." *Wilmington Sav. Fund Soc'y, FSB v. Fernandez*, 712 F. Supp. 3d 324, 332 (E.D.N.Y. 2024) (citing *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 44 (N.D.N.Y. 2015)). The relevant portions of Article 13 of the RPAPL in a residential foreclosure action are Sections 1303, 1304, 1306, 1320, and 1331.

RPAPL § 1303 requires a plaintiff to serve on defendants a notice containing specific language along with the summons and complaint. *See* RPAPL § 1303(3). The notice must "be in bold, fourteen-point type," have its title "in bold, twenty-point type," "be on its own page," and "be printed on colored paper that is other than the color of the summons and complaint." RPAPL § 1303(2).

As discussed, RPAPL § 1304 requires the plaintiff to serve the borrowers a 90-day notice with specific language at least 90 days before commencing the foreclosure action. *See* RPAPL § 1304(1). *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 338 (2d Cir. 2021) ("Proper service of RPAPL [§] 1304 notice on the . . . borrowers is a condition precedent to the commencement of a foreclosure action." (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 961 N.Y.S.2d 200, 202 (2013))). The 90-day notice must be sent to the borrower "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." RPAPL § 1304(2).

RPAPL § 1306 requires the plaintiff to file certain information with the Superintendent of the New York State Department of Financial Services within three business days of mailing the

90-day notice required by RPAPL § 1304. Specifically, the filing "shall include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage," as well as "other information as will enable the superintendent to ascertain the type of loan at issue." *Id.* § 1306(2). RPAPL 1306(1) requires that any complaint served in a foreclosure proceeding brought under Article 13 of the RPAPL, include, "as a condition precedent to such proceeding, an affirmative allegation that at the time the proceeding is commenced, the plaintiff has complied with the provisions of" RPAPL § 1306. *See also CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 535 (2d Cir. 2020).

RPAPL § 1320 requires that the summons, "[i]n an action to foreclose a mortgage on a residential property containing not more than three units" contain specific language in boldface.

Finally, RPAPL § 1331 provides that "[t]he plaintiff, at least twenty days before a final judgment directing a sale is rendered, shall file in the clerk's office of each county where the mortgaged property is situated a notice of the pendency of the action, which shall specify, . . . the date of the mortgage, the parties thereto and the time and place of recording."

## DISCUSSION

### I.    Summary Judgment Against Juliano Petriello

Freedom Mortgage moves for summary judgment, judgment of foreclosure of sale pursuant to Article 13 of the RPAPL, the appointment of a Referee to effectuate a sale of the Subject Property, and the disbursement of the funds from such sale pursuant to RPAPL § 1321. (Summ. J. Mem. at 1.) Freedom Mortgage asserts that it is entitled to such relief because it has produced "a true and correct copy of the Note, Mortgage, and evidence of the Borrowers' default on the monthly mortgage payment due on October 1, 2019 and thereafter" and because Juliano

Petriello cannot meet his burden to substantiate his defenses with admissible evidence. (Summ. J. Mem. at 10, 24–25.)

Juliano Petriello argues that summary judgment must be denied because Freedom Mortgage failed to comply with two United States Department of Housing and Urban Development ("HUD") regulations incorporated into the Mortgage. First, Juliano Petriello asserts that Freedom Mortgage failed to comply with the requirements of 24 C.F.R. § 201.50(b)(5), which requires a lender to send a 30-day notice of default that includes "a statement that if the default persists the lender will report the default to an appropriate credit reporting agency." (Opp'n at 4 (quoting 24 C.F.R. § 201.50(b)(5)).) Second, Juliano Petriello asserts that Freedom Mortgage failed to comply with 24 C.F.R. § 203.604, which provides that "[t]he mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting." 24 C.F.R. § 203.604(b)(i); Opp'n at 4.

A.  Freedom Mortgage's Prima Facie Case

Freedom Mortgage has established the common law elements required for prima facie entitlement to a foreclosure judgment. *See Valente*, 2019 WL 3872853 at *3 (enumerating the common law elements, which include "'the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment' on the loan secured by the mortgage" (quoting *Bent*, 321 F. Supp. 3d at 414)).

First, Freedom Mortgage has submitted a copy of the Note and Mortgage. (Note; Mortgage.) The Borrowers executed the Note in favor of East Coast Capital. (Pl.'s Statement ¶ 1; Resp. Statement ¶ 1; Note at 1–2.) The Borrowers executed the Mortgage in favor of MERS, as mortgagee and nominee of East Coast Capital. (Pl.'s Statement ¶ 2; Resp. Statement ¶ 2;

Mortgage at 1, 8.) Juliano Petriello does not dispute that he and Frank Petriello signed and executed the Note and Mortgage. (Pl.'s Statement ¶¶ 1–2; Resp. Statement ¶¶ 1–2.)

Second, Freedom Mortgage has established ownership of the Mortgage by producing the Assignment of the Mortgage which indicates that the Mortgage was assigned from MERS to Freedom Mortgage on January 29, 2020. (Assignment Mortgage at 3.) Juliano Petriello does not dispute this fact. (Pl.'s Statement ¶ 3; Resp. Statement ¶ 3.)

Third, Freedom Mortgage has established that Juliano Petriello defaulted on payments on the Note secured by the Mortgage. Specifically, Freedom Mortgage has provided the Tracy Affidavit, in which Tracy affirms that, according to Freedom Mortgage's business records, which she reviewed, Juliano Petriello "defaulted on the loan by failing to make monthly payments due on October 01, 2019 and continuing to the present." (Tracy Aff. ¶ 8.) The Tracy Affidavit includes a copy of the Borrowers' payment history, which confirms that the Borrowers failed to make the payments that became due on October 1, 2019 and all subsequent payments. (*Id.* at 16–19.) The payment history indicates that, on January 24, 2020, the Borrowers made payments towards the payment due on September 1, 2019, but no subsequent payments. (*Id.*) Juliano Petriello does not dispute that he and Frank Petriello defaulted on the terms of the Note and Mortgage. (Pl.'s Statement ¶ 4; Resp. Statement ¶ 4.)

> B.  Statutory Elements under Article 13 of the RPAPL

Freedom Mortgage has also met the statutory requirements for a foreclosure judgment set forth in Article 13 of the RPAPL. Juliano Petriello does not dispute Freedom Mortgage's "compliance with RPAPL § 1303, RPAPL § 1304 or RPAPL § 1306, or that [Freedom Mortgage ] mailed the notice of default in accordance with the terms of the mortgage prior to the

18

commencement of the action." (Sur-Reply at 3; *see also* Pl.'s Statement ¶¶ 5–8; Resp. Statement ¶¶ 5–8.)

First, Freedom Mortgage complied with the requirements of RPAPL § 1303. (Summ. J. Mem. at 12.) Freedom Mortgage attached the notice as required by RPAPL § 1303 to the Summons and Complaint. (Zamenhof Summ. J. Decl. Ex. G at 5, ECF No. 40-12.)[9] The process server, McGinley, attests that he served on both Borrowers the Complaint, Summons, and the "Homeowner's Foreclosure Notice as required by RPAPL § 1303," which satisfies the requirement that the notice "be delivered with the summons and complaint." Affs. Serv. at 3, 5; RPAPL § 1303(2). Service of these documents was sufficient as McGinley affirms that he personally served Frank Petriello at the Subject Property and served Juliano Petriello by leaving a copy of the documents with someone of suitable age and discretion—specifically, Frank Petriello—at the Subject Property, which is Juliano Petriello's dwelling or usual place of abode. Affs. Serv. at 3, 5; Fed. R. Civ. P. 4(e)(2)(A)–(B). The "Homeowner's Foreclosure Notice" served on Borrowers includes the specific text required by RPAPL § 1303(3). Zamenhof Summ. J. Decl. Ex. G at 5. The Homeowner's Foreclosure Notice is "in bold, fourteen-point type," has its title "in bold, twenty-point type," is "on its own page," and is "printed on colored paper [(pink)] that is other than the color of the summons and complaint [(white)]." RPAPL § 1303(2).

Second, Freedom Mortgage complied with RPAPL § 1304 by mailing the required 90-day notices to the Borrowers' last known address, which is the Subject Property. (Tracy Aff. ¶ 9; *see also id.* 40–79.) Tracy affirms that "the 90-day notices required by statute, in at least 14 point

---

[9] The Special Summons is attached with the Summons and Complaint to both Zamenhof declarations. (*See* Zamenhof Default J. Decl. Ex. C., ECF No. 38-6; Zamenhof Summ. J. Decl. Ex. G.)

type, . . . were served via certified mail and also by first class mail." (*Id.* ¶ 11.) Attached to the Tracy Affidavit are the 90-day notices: two copies for each of the Borrowers, one of which for each of the Borrowers is stamped with a USPS certified mail barcode and tracking ID. (*Id.* at 40– 79.) Also attached to the Tracy Affidavit are screenshots of the USPS tracking updates for the tracking IDs stamped on the 90-day notices. (*Id.* at 83–87.) These screenshots show that the 90-day notices sent by certified mail were mailed on May 31, 2022. (*Id.* at 84, 87.) These 90-day notices include the required language set forth in RPAPL § 1304(1) in at least fourteen-point type, and were sent to the Borrowers at the Subject Property, which is their last known address. *Id.* ¶ 11; *id.* at 40, 50, 60, 70; *see also* RPAPL § 1304(2).

Third, Freedom Mortgage filed the information required by RPAPL § 1306 with the Superintendent of the New York State Department of Financial Services. (Tracy Aff. ¶ 12; Filing Statements.) Tracy affirms that "within three business days of mailing said notice to the Borrowers, [Freedom Mortgage] electronically filed notice with the Superintendent of Financial Services on May 31, 2022 as required by RPAPL § 1306(2)." (*Id.* ¶ 12.) RPAPL § 1306(1) requires the filing of the notice within three business days of mailing the 90-day notices. The Filing Statements verify the May 31, 2022 filing date. (Filing Statements.)[10] However, they indicate that Freedom Mortgage sent the 90-day notices on May 25, 2022—not May 31, 2022, as the USPS tracking screenshots show. (*Id.*; Tracy Aff. at 83–87.) Regardless of whether the 90-

---

[10] Copies of the Filing Statements for each Borrower are also attached to the Tracy Affidavit. (Tracy Aff. at 80–81.)

day notices were sent on May 25, 2022 or May 31, 2022, however, both dates are within three business days of the May 31, 2022 filing date of the Filing Statements.[11]

Fourth, Freedom Mortgage served the special summonses required by RPAPL § 1320 on the Borrowers when it commenced this action. (Affs. Serv. at 3, 5.) In the Affidavits of Service attached to the Tracy Affidavit, the process server, McGinley, affirms that he served each of the Borrowers with the "SUMMONS IN A CIVIL ACTION which contains the additional notice requirements in accordance with RPAPL §1320." (*Id.*) Freedom Mortgage provided the special summons as part of Exhibit G to the Zamenhof Summary Judgment Declaration. (ECF No. 40-12 at 3.) The special summons contains all of the text required by RPAPL § 1320.

Fifth, Freedom Mortgage satisfied the requirements of RPAPL § 1331 by filing a Notice of Pendency, which includes "the date of the mortgage, the parties thereto and the time and place of recording" with the Suffolk County Clerk's Office on January 23, 2023. (Zamenhof Decl. ¶ 11; *see also* Not. Pendency.) Final judgment directing a sale in this action has not yet been rendered and more than twenty days since the filing date of the Notice of Pendency have elapsed.

### C. Juliano Petriello's Defenses and Counterclaims

Since Freedom Mortgage has established its prima facie case, the burden shifts to Juliano Petriello "to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Bent*, 321 F. Supp. 3d at 414–15 (citing *Olasov*, 793 N.Y.S.2d at 52).

### i. *Waiver of Nineteen Affirmative Defenses and Three Counterclaims*

While Juliano Petriello raised twenty affirmative defenses and three counterclaims in his Answer, he raises only one of those affirmative defenses—"Improper or No Notice of

---

[11] Since, May 25, 2022 fell on a Wednesday and May 30, 2022 was a holiday (Memorial Day), May 31, 2022 is exactly three business days after May 25, 2022.

Default"—and *none* of his counterclaims in his opposition and sur-reply to Freedom Mortgage's Motion for Summary Judgment. (*Compare* Answer 1–14, *with* Opp'n *and* Sur-Reply.) Juliano Petriello has abandoned these nineteen affirmative defenses and three counterclaims by failing to argue them in opposition to Freedom Mortgage's Motion for Summary Judgment, especially since Freedom Mortgage makes specific arguments against each affirmative defense and counterclaim raised in Juliano Petriello's Answer. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment [of claims or defenses] by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.")[12]

_____

[12] Even if I were to find that Juliano Petriello had not abandoned these nineteen affirmative defenses and three counterclaims, they are without merit for the following reasons.

First, the affirmative defenses asserting that Freedom Mortgage failed to comply with the requirements of RPAPL § 1303 and § 1304 are contrary to the evidence and moot because Juliano Petriello has conceded that Freedom Mortgage complied with both statutes. *See supra*, Discussion § I.B; Sur-Reply at 3; Answer at 2.

Second, the affirmative defenses arguing that Freedom Mortgage does not have a security interest in the Subject Property or standing to pursue this foreclosure action are belied by the text of the Mortgage and Assignment of the Mortgage, which indicate that the Mortgage was made in favor of MERS and subsequently assigned to Freedom Mortgage and that both the Mortgage and Assignment were recorded with the Suffolk County Clerk's Office. (Mortgage at 1, 3; Assignment Mortgage at 1, 3; *see also* Answer at 2–5, 9.)

Third, the affirmative defense asserting that "Power of Attorney [was] not provided for each or every assignment" is moot given that Juliano Petriello does not dispute that the Mortgage was validly assigned to Freedom Mortgage. (Answer at 5; Pl.'s Statement at 3; Resp. Statement at 3.)

Fourth, the affirmative defense "Rejection of Unverified Pleading" is meritless as the verification of a complaint brought by a foreign corporation may be done by the corporation's attorney, and here Freedom Mortgage, a New Jersey corporation, affixed to its Complaint the necessary affidavit in the form of a "CERTIFICATION BY ATTORNEY" signed by its counsel, Deana Cheli. N.Y. C.P.L.R. §§ 3020(d)(3), 3021; Compl. at 6.

Fifth, the affirmative defense that Freedom Mortgage violated Banking Law § 6-1 fails because, for first lien home loans, Banking Law § 6-1 only applies to loans with interest rates in excess of

### ii. *Wavier of Face-to-Face Requirement Affirmative Defense*

In opposition to Freedom Mortgage's Summary Judgment Motion, Juliano Petrillo

asserts, for the first time, a new affirmative defense: that Freedom Mortgage failed to comply

with 24 C.F.R. § 203.604, a HUD regulation that provides that "[t]he mortgagee must have a

face-to-face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting."

24 C.F.R. § 203.604(b)(1)(i); Opp'n at 4. "Under Rule 8(c), [Fed. R. Civ. P.,] affirmative

defenses are waived unless they are raised in a responsive pleading." *Utica Mut. Ins. Co. v.*

*Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021); *see, e.g.*, *Gustavia Home, LLC v.*

---

8% more than "treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender." N.Y. Banking Law § 6-l(1)(g)(i). At the relevant time, the yield rate was 3.00% meaning the applicable threshold was 11.00%. *Id.* Since the interest rate on the Note is 4.25%, well below the threshold, Banking Law § 6.1 is inapplicable. *Id.*; Note at 1.

Sixth, the affirmative defense for insufficient service of process is moot because Juliano Petriello no longer disputes that Freedom Mortgage "complied with the service requirements of the summons and complaint." (Sur-Reply at 3; *see also* Answer at 8.)

Seventh, the affirmative defense "Home Ownership and Equal Protection Act" is time barred because actions for failure to comply with the Act must be filed within one year of the violation and this action was brought seven years after the mortgage was entered into. *See* 15 U.S.C. § 1640(e).

Eighth, the affirmative defense, "Recording" fails because Freedom Mortgage's interest in the Subject Property was in fact recorded on February 10, 2020. (Assignment Mortgage at 1.)

Finally, Juliano Petriello has failed to provide any evidence, let alone factual allegations, to support any of the remaining affirmative defenses or the three counterclaims that are raised in his Answer but not discussed in his opposition brief or sur-reply on Freedom Mortgage's Motion for Summary Judgment. *See* Answer 7–14 (raising affirmative defenses of "Implied Covenant of Good Faith and Fair Dealing," "Deceptive Practices Act under NY Gen. Bus. Law § 349 (h)," "Unclean Hands Doctrine," "Laches, Waiver, Estoppel & Unclean Hands," "Deceptive Practices Act," "Preservation of Defenses," and "Denial of Damages" and counterclaims of "Breach of the Implied Covenant Of Good Faith And Fair Dealing," "Violation Of NYS Banking Law Section 6-1," and "Violation Of The Deceptive Practices Act").

*Hoyer*, 362 F. Supp. 3d 71, 82 (E.D.N.Y. 2019) (holding, in a foreclosure action, mortgagor defendant waived an affirmative defense because it was not raised in defendant's answer, but instead for the first time in opposition to mortgagee plaintiff's motion for summary judgment). Accordingly, Juliano Petriello may not assert non-compliance with 24 C.F.R. § 203.604 as an affirmative defense to Freedom Mortgage's claims.

### iii.  Notice Content Defense

The only affirmative defense raised in the Answer that Juliano Petriello has not abandoned is the "Improper or No Notice of Default" affirmative defense (the "Notice Content Defense"). (*See* Answer at 11.) Juliano Petriello argues in his opposition to Freedom Mortgage's Motion for Summary Judgment that Freedom Mortgage failed to comply 24 C.F.R. § 201.50(b)(5), another HUD regulation, which requires a lender to send a 30-day notice of default that includes "a statement that if the default persists the lender will report the default to an appropriate credit reporting agency." (Opp'n at 4 (quoting 24 C.F.R. § 201.50(b)(5)).) To support this argument, Juliano Petriello submits an affidavit in which he attests that "[n]either [he] nor [his] property ever received a notice of default that included a statement that if the default persists the lender will report the default to an appropriate credit reporting agency." (J. Petriello. Aff. ¶ 5.)

### 1.  The Mortgage's Incorporation of HUD Regulations

Juliano Petriello asserts that the HUD regulations were incorporated by reference into the Mortgage, and that he may raise Freedom Mortgage's failure to comply with a specific HUD regulation as an affirmative defense. (Opp'n at 5 (citing out of circuit caselaw).) Section 9(a) of the Mortgage, entitled "Default," provides: "Lender may, *except as limited by regulations issued by the Secretary*, in the case of payment defaults, require immediate payment in full of all sums

24

secured by this Security Instrument if" the Borrowers defaults. (Mortgage at 8 (emphasis added).)

Freedom Mortgage does not respond to Juliano Petriello's argument that HUD regulations were incorporated by reference by this portion of the Mortgage. Instead, Freedom Mortgage asserts that Juliano Petriello "was not entitled to a notice of default under the terms of his mortgage," that it in fact did mail Juliano Petriello a notice of default, and that there "is no requirement that any notice of default contain an explanation of credit reporting." (Reply ¶¶ 13–14.)

I find that the Mortgage did incorporate by reference HUD regulations that limit the rights of East Coast Capital and Freedom Mortgage—which are, respectively, the Lender and the Lender's successor in interest—in the event of the Borrowers' default. (Mortgage at 4, 8.)

### 2. *Inapplicability of 24 C.F.R. § 201.50*

In asserting the Notice Content Defense, Juliano Petriello assumes the applicability of 24 C.F.R. § 201.50 ("Section 201.50") to the Mortgage in this action without the requisite factual support. Section 201.50 is contained within "Title I Property Improvement and Manufactured Home Loans" ("Title I"). 24 C.F.R. Part 201. The HUD regulations contained in Title I were promulgated to "implement the provisions of section 2 of title I of the National Housing Act (12 U.S.C. 1703)." 24 C.F.R. § 201.1. Section 2 of Title I of the National Housing Act, 12 U.S.C. § 1703, in turn, empowers the Secretary of HUD to insure financial institutions against losses on loans made for the purpose of financing property improvements, the purchase of a manufactured home for use as the owner's principal residence, and the financing of a lot on which such a

manufactured home would be placed. 12 U.S.C. § 1703.[13] The HUD regulations set forth in Title I are therefore only applicable to mortgages taken out to pay for property improvements, the purchase of a manufactured home, or the purchase of a lot on which a manufactured home is to be placed.

"Federal Rule of Civil Procedure 8(c) places the burden of pleading an affirmative defense on the defendant." *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 195 (2d Cir. 2021) (citing *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017)). "The burden of proof to establish an affirmative defense" likewise "falls on the defendant." *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, 82 F.4th 161, 171 (2d Cir. 2023).

Here, Juliano Petriello has not pointed to any evidence in the record that raises a question of fact as to whether the Mortgage was a Title I mortgage. He does not assert that the Mortgage was taken out to fund property improvements on the Subject Property, that it was used to purchase a manufactured home that was placed onto the Subject Property, or that it was used to purchase the Subject Property for the purpose of placing a manufactured home on to the Subject Property. Nothing in the record indicates that the Mortgage was covered by 24 C.F.R. § 201.50. Accordingly, Juliano Petriello has not met his burden to establish that 24 C.F.R. § 201.50 limits Freedom Mortgage's right to "require immediate payment in full of all sums secured by" the Mortgage following the Borrowers' default. (Mortgage at 8.) His argument that the HUD regulation applies to the Mortgage is instead based on no more than "mere speculation or conjecture as to the true nature of the facts" and does not "create a genuine issue of material fact" that would preclude summary judgment. *Hicks*, 593 F.3d at 166.

---

[13] 24 C.F.R. § 201.51, entitled "Proceeding against the loan security," discusses how lenders can proceed against the security for property improvement loans and manufactured home loans.

Since Freedom Mortgage has established its prima facie entitlement to a foreclosure judgment, and Juliano Petriello has failed to "raise a triable issue of fact, including with respect to any alleged defenses or counterclaims," Freedom Mortgage has met its burden for summary judgment against Juliano Petriello on the issue of liability on the RPAPL mortgage foreclosure claim. *Bent*, 321 F. Supp. 3d at 414–15 (citing *Olasov*, 793 N.Y.S.2d at 52).

## II.    Default Judgment Against Frank Petriello and Joseph H. Levine MD PC

Freedom Mortgage moves for default judgment against Frank Petriello and Joseph H. Levine MD PC. (Second Mot. Default J. at 1.) It asserts that both Frank and Juliano Petriello "executed a Mortgage . . . secured by" the Subject Property and that Joseph H. Levine MD PC is a party "who ha[s] or claim[s] to have a lien on or interest in the" Subject Property. (Default J. Mem. at 2.)

Freedom Mortgage "must bring suit against all parties with an interest in the property because 'the absence of a necessary party in a foreclosure action leaves that party's rights unaffected by the judgment and sale, and the foreclosure sale may be considered void as to the omitted party.'" *Blue Castle (Cayman) Ltd. v. Miller*, __ F. Supp. 3d __, No. 23-cv-4133, 2025 WL 833833, at *8 (S.D.N.Y. March 14, 2025) (quoting *McWhite v. I & I Realty Grp., LLC*, 179 N.Y.S.3d 302, 305 (N.Y. App. 2022)). "When a default judgment is entered against a defendant with a nominal interest in a property, any such interest in the relevant property is terminated." *Windward Bora LLC v. Baez*, No. 19-cv-5698, 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020).

### A.  Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading*

*Corp.*, 619 F.3d 207, 213 (2d Cir. 2010); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-cv-2796, 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Elec. Order, Jan. 9, 2024 ("A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process.").

Here, Freedom Mortgage properly served Frank Petriello with the Summons and Complaint. (Affs. Serv., 5–6.) Frank Petriello was personally served at the Subject Property by a non-party who was at least 18 years old. *Id.* at 5; *see* Fed. R. Civ. P. 4(c)(1), (e)(2)(A). Joseph H. Levine MD PC, however, was not properly served.

Under New York law, service on a domestic professional corporation, such as Joseph H. Levine MD PC, must be made by either (1) delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service," or (2) by personally delivering to, or electronically filing the process with, the New York Secretary of State with the statutory fee. N.Y. C.P.L.R. § 311; N.Y. Bus. L. § 306; *see also* Fed. R. Civ. P. 4(h).

Under New York law, an individual, including a person authorized to receive service of process for a professional corporation, can be served through delivery of the summons to the person being served or to "a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served, along with mailing the summons to the person's last known address of residence." *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 191–92 (E.D.N.Y. 2025); *see also* N.Y. C.P.L.R. § 308(1)–(2). A plaintiff must attempt service through such means at least three times, "optimally on non-consecutive days" thereby demonstrating "due diligence" before resorting to "nail-and-mail service." *Veeraswamy*,

765 F. Supp. 3d at 192 (quoting *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002)); *see also* N.Y. C.P.L.R. § 308(4). "Nail-and-mail service of process entails a process servicer 'affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business.'" *Veeraswamy*, 765 F. Supp. 3d at 192 (quoting N.Y. C.P.L.R. § 308(4)).

Here, after three failed attempts to serve him personally, service was effected on Joseph H. Levine, the individual, by affixing the Summons and Complaint to the door of his residential address at 34 Forest Drive, Port Washington, New York on February 28, 2023, and by mailing the Summons and Complaint to the same address on March 7, 2023. Affs. Serv. 1–2; *see also Veeraswamy*, 765 F. Supp. 3d at 192. However, Freedom Mortgage has failed to show that Joseph H. Levine, the individual, is "an officer, director, managing or general agent, or cashier or assistant cashier or . . . any other agent authorized by appointment or by law to receive service" of process for Joseph H. Levine MD PC. N.Y. C.P.L.R. § 311.

While "[p]rocess servers are permitted to rely on the business's employees to identify those individuals who are authorized to accept service" for the business, the process server, Cunningham, does not attest that any employee of Joseph H. Levine MD PC made any such representations. *Lin v. Yuri Sushi, Inc.*, No. 18-cv-528, 2025 WL 774911, at *2 (S.D.N.Y. Mar. 11, 2025) (citing *Old Rep. Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)); Aff. Serv. at 1. Because Freedom Mortgage served Joseph H. Levine, the individual, through nail-and-mail service at his personal residence, Cunningham encountered no one, let alone an employee of Joseph H. Levine MD PC, who represented that, at the time of service,

Joseph H. Levine was an officer, director, managing or general agent, cashier, assistant cashier, or otherwise authorized to receive service of process for Joseph H. Levine MD PC. *See* N.Y. C.P.L.R. § 311. Freedom Mortgage has also failed to show that it served Joseph H. Levine MD PC by delivering or electronically submitting process with the New York Secretary of State. *See* N.Y. Bus. L. § 306.

Accordingly, this Court lacks personal jurisdiction over Joseph H. Levine due to insufficient service of process. I therefore deny Freedom Mortgage's Motion for Default Judgment against Joseph H. Levine MD PC.

   B. <u>Procedural Compliance</u>

Local Civil Rule 7.1 requires that all motions include the following: a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information and portions of the record necessary for the court to decide the motion. Under Local Civil Rule 55.2, a party seeking a default judgment must also file a proposed order and a certificate of service stating that all supporting documents, "including the 'Clerk's Certificate of Default,' . . . have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought." Local Civil Rule 55.2(a)(2)–(3).

Local Civil Rule 55.2 also requires that a party moving for default judgment file "an affidavit or declaration showing that":

   (A) the clerk has entered default under Local Civil Rule 55.1;

   (B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521; and

   (C) the party against whom judgment is sought is not known to be a minor or an incompetent person, or, if seeking default judgment by the court, the minor or

incompetent person is represented by a general guardian, conservator, or other fiduciary who has appeared.

Local Civil Rule 55.2(a)(1).

### i.  *Motion Papers and Service*

Freedom Mortgage has complied with Local Civil Rule 7.1 because it filed a notice of motion concerning the Second Motion for a Default Judgment (Default J. Mot.), memorandum of law (Default J. Mem.), and proposed order granting default judgment (Proposed Default Order). However, for the reason discussed below, Freedom Mortgage has complied with Local Civil Rule 55.2 only with respect to Frank Petriello, and not with respect to Joseph H. Levine MD PC.

In the Zamenhof Default Judgment Declaration, Zamenhof attests that Frank Petriello and Joseph H. Levine MD PC are in default and that the Clerk of Court entered a Certificate of Default with respect to both parties. (Zamenhof Default J. Decl. ¶ 13.) Attached to that declaration is the Clerk of Court's Certificate of Default as to Frank Petriello and Joseph H. Levine MD PC. (ECF No. 38-13.) In support of its Second Motion for Default Judgment, Freedom Mortgage also submitted a declaration from Zamenhof that was previously submitted in support of Freedom Mortgage's request for certificate of default, in which Zamenhof attests that the Defendants are not infants. (ECF No. 38-12 at 3–5; ECF No. 38-12 at 4; *see also* Zamenhof Default Cert. Decl. ¶ 6.)

Freedom Mortgage also filed an affidavit concerning service of the Second Motion for Default Judgment on Frank Petriello and Joesph H. Levine MD PC. (ECF No. 39; *see also* ECF No. 38-13.) The affidavit of service indicates that Frank Petriello was served via mail sent to the Subject Property, which is his last known address. (ECF No. 39.) However, the affidavit fails to show proper service on Joseph H. Levine MD PC. It indicates that Joseph H. Levine MD PC was served via mail sent to both 34 Forest Drive, Port Washington, New York and 100 Port

31

Washington Boulevard, Roslyn, New York. (*Id.*) Although Freedom Mortgage has provided evidence that the Port Washington address is the *residential* address for the *individual* Joseph H. Levine (*see* ECF No. 37 at 2), it has not demonstrated that either of these two addresses are the *business* address for Joseph H. Levine MD PC. Since Local Rule 55.2 requires the mailing of "all documents in support of the request for default judgment" to the *business address* of non-individual parties, Freedom Mortgage has not satisfied the requirements of Local Rule 55.2 with respect to Joseph H. Levine MD PC. Local Rule 55.2(a)(3).

Accordingly, the Motion for Default Judgment against Joseph H. Levine MD PC is denied not only for lack of personal jurisdiction, but also due to Freedom Mortgage's failure to comply with Local Civil Rule 55.2. *See* Local Civil Rule 55. 2(a)(2)–(3).

### ii. Servicemembers Civil Relief Act, 50 U.S.C. § 3931 ("SCRA")

Freedom Mortgage has complied with the SCRA, which provides, in part, that before entering default judgment in favor of a plaintiff, courts must "require the plaintiff to file . . . an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931(b)(1)(A). "The non-military affidavit must be based on facts adduced from an investigation conducted *after* the defendant defaults." *Wilmington Sav. Fund*, 712 F. Supp. 3d at 332 (emphasis in original).

In the Parker Affidavit, Parker affirms that he "conducted an online search of the Department of Defense Manpower Data Center for the Defendants, Juliano Petriello, Frank Petriello and Joseph H. Levine MD PC" and that the retrieved status reports "indicate[d] that said Defendants are not in active military service as defined in the Servicemembers' Civil Relief Act." (Parker Aff. ¶ 2.) The Status Report for Frank Petriello is attached to the Parker Affidavit

and indicates that Frank Petriello was not on active duty and had not been on active duty within 367 days prior to the date of the report—March 23, 2023. (*Id.* at 4.)

Because Joseph H. Levine MD PC is a corporation and not a natural person, the SCRA does not apply.[14] *See Harbus v. Vosa TV Inc.*, No. 24-cv-3572, 2025 WL 1153818, at *8 (E.D.N.Y. Apr. 21, 2025); *Falls Lake Nat'l Ins. Co. v. BNH Constr. (NY) Inc.*, No. 24-cv-4244, 2025 WL 925826, at *7 (E.D.N.Y. Mar. 27, 2025).

Freedom Mortgage has therefore complied with the SCRA's requirement with respect to its request for default judgment against Frank Petriello. *See ADI Glob. Distrib. v. Green*, No. 20-cv-3869, 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (concluding that the plaintiff complied with the SCRA by providing "a declaration from . . . counsel stating that Plaintiff's counsel searched the Department of Defense's website and obtained a Status Report pursuant to the Servicemembers Civil Relief Act"), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023); *Wilmington Sav. Fund*, 712 F. Supp. 3d at 333 ("Adequate proof [of compliance with the statute] might consist of a report from the Department of Defense's website obtained after the defendant's default certifying that the defendant is not in active military service.").

---

[14] Nevertheless, the Mace Affidavit, filed by Freedom Mortgage on October 2, 2023, complies with the SCRA's requirements for Joseph H. Levine, as an individual. Mace attests that she "conducted a search of the Department of Defense Manpower Data Center" for each of the three Defendants, and that the resulting status reports, attached to her affidavit, indicate that the Defendants are not in active military service. (Mace Aff. at 1.) The attached status reports for Joseph H. Levine, Joseph Levine, Joesph Levine MD PC, and Joesph H. Levine MD PC, which are all dated October 2, 2023, indicate that there is no active duty service member with any of those names as of that date or within the previous 367 days. (*Id.* at 6, 8, 10, 12.)

C. Default Factors

In determining whether to grant a motion for default judgment, a court must evaluate: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Stokes v. MilkChocolateNYC LLC*, No. 22-cv-6786, 2023 WL 4447073, at *4 (S.D.N.Y. July 11, 2023). A defendant's nonappearance and failure to respond to a complaint demonstrates willfulness. *See Trs. of Bldg. Trades Educ. Benefit Fund v. Laura Elec. Lighting & Maint. Serv. Inc.*, No. 20-cv-3700, 2021 WL 6294391, at *3 (E.D.N.Y. Dec. 14, 2021) (finding a willful default when defendants did not file a timely answer), *report and recommendation adopted*, 2022 WL 59655 (E.D.N.Y. Jan. 6, 2022).

Frank Petriello was properly served and has not appeared in this action. (Affs. Serv., 5–6.) Since Freedom Mortgage has submitted sufficient evidentiary support for its claim and Frank Petriello has not rebutted this evidence, there is no basis to find that Frank Petriello has a meritorious defense. *See Green*, 2023 WL 3355049, at *4 (granting default judgment where defendants did not appear), *report and recommendation adopted*, No. 20-cv-3869, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). Finally, Freedom Mortgage would be prejudiced if the Court were to deny its request for a default judgment against Frank Petriello because Freedom Mortgage would have no other way to recover the funds to which it is entitled under the Note and Mortgage. *See Wilmington PT Corp. v. Parker*, No. 19-cv-2380, 2020 WL 1704303, at *7 (E.D.N.Y. Mar. 20, 2020) (finding prejudice where plaintiff would have no other methods of recovery if default judgment were not granted), *report and recommendation adopted sub nom.*,

2020 WL 1703634 (E.D.N.Y. Apr. 8, 2020). Taken together, the default factors all favor granting a default judgment against Frank Petriello.

### D.  Liability Against Frank Petriello

As discussed in the analysis of the Motion for Summary Judgment against Juliano Petriello, Freedom Mortgage has established its prima facie case for a foreclosure judgment against the Borrowers. *See supra*, Discussion § I.A–B. The Borrowers agreed to make monthly payments of $2,043.21 under the terms of the Note and Mortgage. (Note at 1; Mortgage at 1.) Both Borrowers failed to make the monthly payment that became due on October 1, 2019, and all subsequent payments, interest, and fees, which resulted in their default. (Pl.'s Statement ¶ 3; *see also* ECF No. 40-9; Breach Ltrs.) Freedom Mortgage sent the proper notices required by Article 13 of the RPAPL to both Borrowers. *See supra*, Discussion § I.B. Frank Petriello has not appeared to deny the receipt of the notices or contest Freedom Mortgage's prima facie case. Accordingly, Freedom Mortgage is entitled to a default judgment against Frank Petriello.

## III.    Damages and Other Relief

Having found that Freedom Mortgage is entitled to summary judgment against Juliano Petriello and to a default judgment against Frank Petriello, I now must determine whether Freedom Mortgage is entitled to the damages and other relief it seeks against the Borrowers.

"In evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages." *Clayton*, 2025 WL 1173926, at *5 (citing *Greyhound Exhibitgroup*, 973 F.2d at 158). "[C]ourts must 'ascertain the amount of damages with reasonable certainty, supported by an evidentiary basis such as detailed affidavits and documentary evidence.'" *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Richmond Cnty. Pub.*

*Adm'r*, No. 24-cv-4111, 2025 WL 630481, at \*4 (E.D.N.Y. Feb. 27, 2025) (quoting *Ramgoolie*, 2024 WL 4429420 at \*3).

Rule 55(b)(2), Fed. R. Civ. P., also permits a court to "conduct hearings or make referrals" when needed to "determine the amount of damages" for a default judgment. Fed. R. Civ. P. 55(b)(2); *see also Sette-Hughes v. Sprauve*, 663 F. App'x 10, 11 (2d Cir. 2016) ("To determine damages in the default judgment context, a district court may conduct a hearing or rely on evidence provided by the plaintiff.") "Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup*, 973 F.2d at 158. Nonetheless, "[a] plaintiff may submit documentary evidence or detailed affidavits to support their damages claim." *Mulligan Funding, LLC v. Tommy Interior Contr. Corp.*, 765 F. Supp. 3d 201, 217 (E.D.N.Y. 2025). "If the documents the plaintiff has submitted provide a 'sufficient basis from which to evaluate the fairness of' the requested damages, the Court need not conduct an evidentiary hearing." *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Prime Contrs. Inc.*, 2024 WL 5048318, at \*4 (S.D.N.Y. Nov. 18, 2024) (quoting *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). "In the context of a default judgment in a foreclosure action, several courts in the Eastern District of New York have required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan." *Happy Homes, LLC v. Jenerette-Snead*, No. 15-cv-1788, 2016 WL 6599826, at \*5 (E.D.N.Y. Nov. 7, 2016) (collecting cases in which courts required plaintiffs to provide the date of borrowers' default, borrowers' history of payments prior to the default, and other relevant documents before granting default judgment in a foreclosure action).

Freedom Mortgage moves for entry of a judgment of foreclosure and sale, the appointment of Stephanie S. Goldstone as Referee to sell the Subject Property, and disbursement of the funds from such a sale. (Summ. J. Mem. at 1, 26–27; Proposed Summ. J. Order at 2–3.) According to Freedom Mortgage's proposed order granting summary judgment, Freedom Mortgage seeks $532,637.04 owed on the Note and Mortgage through January 1, 2024, as well as interest incurred after that date at the note rate of 4.25% per year, and "any advances" Freedom Mortgage "made for taxes, insurance, principal, and interest, and any other charges due to prior mortgages or to maintain the property pending consummation of this foreclosure sale, not previously included in the computation." (Proposed Summ. J. Order at 6.) In the proposed order granting summary judgment, Freedom Mortgage also seeks $10,105.00 in attorneys' fees and $226.58 in "Costs and Disbursements." (*Id.*)

### A. Unpaid Principal and Interest

Freedom Mortgage has provided sufficient evidence that the Borrowers defaulted on their obligation to make monthly payments under the terms of the Note and Mortgage. As discussed, Freedom Mortgage provided copies of the Note, Mortgage, and the 90-day notices of default sent to the Borrowers via certified and first-class mail. (Note; Mortgage; Tracy Aff. at 40–79.) Additionally, Freedom Mortgage filed copies of the breach letters sent to the Borrowers on January 27, 2020, which demanded payment on past due loan payments for the period of October 1, 2019 through January 1, 2020. (Zamenhof Summ. J. Decl. ¶ 10; Breach Ltrs.) In her affidavit, Tracy attests that Freedom Mortgage's business records indicate that the Borrowers "defaulted on the loan by failing to make monthly payments due on October 01, 2019 and continuing to the present." (Tracy Aff. ¶ 8.) Furthermore, Freedom Mortgage's business records showing Borrowers' payment history are attached to the Tracy Affidavit and confirm that the Borrowers

failed to make the October 1, 2019 payment and all subsequent payments. (*Id.* at 8–23.) According to Tracy, the "unpaid principal balance due on the loan is $388,708.92." (*Id.* ¶ 8.) Therefore, I award $388,708.92 to Freedom Mortgage for the unpaid principal balance on the Note.

According to Tracy, and confirmed by the text of the Note, the interest rate under the Note was 4.25%. (*Id.* ¶ 15; Note at 1.) Accordingly, I award Freedom Mortgage interest in the amount of 4.25% per year on the unpaid principal balance of $388,708.92 from September 1, 2019 to the date on which this Memorandum and Order is entered.[15]

### B. Judgment of Foreclosure and Sale and the Appointment of a Referee

Freedom Mortgage seeks a judgment of foreclosure and sale of the Subject Property and seeks the appointment of Stephanie S. Goldstone as Referee to conduct the sale. (Proposed Summ. J. Order at 2–3.) It requests that the Referee be paid:

> for conducting the sale, in accordance with CPLR 8003(b), not to exceed $750.00 unless the property sells for $50,000.00 or more OR in the event a sale was cancelled or postponed, Plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment or cancellation, unless the Referee caused the delay to conduct the sale.

(*Id.* at 5.)

"A plaintiff is entitled to foreclose on a property if it demonstrates the existence of an obligation secured by a mortgage, and a default on that obligation." *Baez*, 2020 WL 4261130, at *5 (quoting *OneWest Bank, N.A. v. Denham*, No. 14-cv-5529, 2015 WL 5562980, at *14 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted,* 2015 WL 5562981 (E.D.N.Y.

---

[15] Freedom Mortgage's proposed order granting summary judgment calculates interest from September 1, 2019 to December 31, 2023 to be $71,568.50. (Tracy Aff. ¶ 15; Zamenhof Summ. J. Decl. ¶ 24.) The Court has not been able to recreate the calculation with the same result.

Sept. 21, 2015)). "Courts routinely appoint referees to effectuate the sale of foreclosed properties." *Valente*, 2019 WL 3872853, at *4 (E.D.N.Y. July 16, 2019) (collecting cases).

Since Freedom Mortgage has established its right to foreclose on the Subject Property due to Borrowers' default on the Note and Mortgage, I grant Freedom Mortgage's request for a judgment of foreclosure and sale and the appointment of Stephanie S. Goldstone as the Referee to conduct the sale. I also find that the referee fee structure as set by N.Y. C.P.L.R. § 8003(b) is appropriate. If the property is sold for more than $50,000 and the Referee seeks a fee of more than $750, Freedom Mortgage shall make a fee application, signed by the Referee, to the Court and shall serve that application on the Defendants. *See, e.g., RSS WFCM2018-C44 - NY LOD, LLC v. 1442 Lexington Operating DE LLC*, No. 21-cv-4424, 2024 WL 4381120, at *2 (S.D.N.Y. Oct. 2, 2024). The proceeds of the sale will be applied to the total amount owed on the Note as set forth above.

### C. Attorneys' Fees, Costs, and Disbursements

The text of the Note states that, in case of Borrowers' default, "Lender may require Borrower[s] to pay costs and expenses including reasonable and customary attorneys fees for enforcing this Note to the extent not prohibited by applicable law." (Note at 2.) Likewise, the text of the Mortgage states that "[i]n any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount owed Lender, which fees shall become part of the Sums Secured." (Mortgage at 5.) Accordingly, Freedom Mortgage is entitled to reasonable attorneys' fees and costs as well as any other costs incurred in bringing this foreclosure action.

In the proposed order granting summary judgment, Freedom Mortgage appears to request $10,105.00 in attorneys' fees and $226.58 in "Costs and Disbursements." (Proposed Summ. J. Order at 6.) In the Zamenhof Summary Judgment Declaration, Zamenhof attests that Freedom Mortgage "requests the costs as noted in the Bill of Costs annexed hereto as Exhibit 'N' and attorney fees as set forth in the Declaration of Services Rendered annexed hereto as Exhibit 'O'." (Zamenhof Decl. ¶ 25.) The Bill of Costs indicates that Freedom Mortgage spent $402.00 on filing this action, $950.00 on serving the Summons and Complaint, and $226.58 on filing the Notice of Pendency. (Bill Costs, ECF No. 40-19.) The Declaration of Services Rendered provides that Freedom Mortgage spent a flat fee of $5,650.00 on preparing and initiating this action and incurred $4,455.00 in additional attorneys' fees for a total of $10,105.00. (Decl. Servs. Rendered ¶¶ 5–8, ECF No. 40-20.) The $10,105.00 in attorney's fees does not include the $402.00 filing fee or the $950.00 spent on serving the Summons and Complaint, and these costs are not otherwise addressed in the Proposed Order granting summary judgment. (*See id.; see generally* Proposed Summ. J. Order.)[16]

"Costs for shipping, filing fees, process servers, and litigation support are recoverable." *See HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 726 (S.D.N.Y. 2018), *as amended* (June 18, 2018) (collecting cases). I interpret Freedom Mortgage's motion papers to include a request for the $402.00 filing fee, the $950.00 spent on serving the Summons and Complaint, and the $226.58 cost of filing the Notice of Pendency although these specific costs are not explicitly

---

[16] In its proposed order granting summary judgment, Freedom Mortgage seeks $226.58 "for costs and disbursements," which appears to correspond to the $226.58 cost of filing the Notice of Pendency. (Proposed Summ. J. Order at 6.)

included in the Proposed Order granting summary judgment. Accordingly, I grant Freedom Mortgage's request for these costs, which are addressed in the Bill of Costs.

As discussed, in the Declaration of Services Rendered Zamenhof attests that Freedom Mortgage expended a flat fee of $5,650.00 in attorneys' fees for preparing and initiating this action and $4,455.00 in additional attorneys' fees. (Decl. Servs. Rendered ¶¶ 5–7.) Zamenhof affirms that "[b]ecause this office charges a flat fee for foreclosure work, individual time sheets are not maintained," and submits a list of services that were performed by "Deanna Cheli, Esq." to prepare and initiate this action. (*Id.* ¶ 6.)

"The law in this circuit is that no award for attorneys' fees is appropriate where the attorney failed to maintain contemporaneous time records." *Kottwitz v. Colvin*, 114 F. Supp. 3d 145, 150 (S.D.N.Y. 2015) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). This is considered "a strict rule from which attorneys may deviate only in the rarest of cases." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010); *Denham*, 2015 WL 5562980, at *10 ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances." (quoting *Onewest Bank, N.A. v. Cole*, No. 14-cv-3078, 2015 WL 4429014, at *6 (E.D.N.Y. July 17, 2015), *report and recommendation adopted sub nom. One W. Bank, N.A. v. Cole*, 2016 WL 1069951 (E.D.N.Y. Mar. 18, 2016))). Accordingly, I deny, with leave to renew, Freedom Mortgage's request for $5,650.00 for the flat attorneys' fee because it has failed to provide contemporaneous time records.

With respect to the $4,455.00 in additional attorneys' fees Freedom Mortgage incurred following the filing of this action, Zamenhof includes a table which provides the date of the service rendered, time spent on the service, the hourly rate of the attorney, a description of the

service, and the servicing attorney's name. (Decl. Servs. Rendered ¶ 7.) I refer Freedom

Mortgage's request for $4,455.00 in additional attorneys' fees to Magistrate Judge Wicks for a

written report and recommendation.

     D.  <u>Other Damages</u>

In addition to the unpaid principal and intertest owed on the Note, Freedom Mortgage

seeks $69,575.95 in "Total Escrow Advances," $775.00 for "Property Inspections," $247.26 for

the "Mortgage Insurance Premium," and $1,761.41 in "Late Charges Prior to Acceleration."

(Zamenhof Summ. J. Decl. ¶ 24.)

Freedom Mortgage fails to show how it calculated these amounts claimed or why

Borrowers are liable for these amounts. Accordingly, Freedom Mortgage has not shown that it is

entitled to these damages on the current record. *See Empire Cmty. Dev., LLC v. Larsen*, No.

2:23-cv-5896, 2024 WL 1846600, at *5 (E.D.N.Y. Apr. 23, 2024), *report and recommendation

adopted,* 2024 WL 2816596 (E.D.N.Y. June 3, 2024) (collecting cases in which the court denied

default judgment as to damages due to plaintiff's failure to substantiate damages with sufficient

documentation).

Accordingly, Freedom Mortgage's request for these other damages are referred to

Magistrate Judge Wicks for an inquest and written report and recommendation.

**CONCLUSION**

For the reasons set forth above, I enter judgment as follows:

Freedom Mortgage's Second Motion for Default Judgment against Frank Petriello and

Joseph H. Levine MD PC (ECF No. 38) is granted in part and denied in part. Default judgment is

granted with respect to Frank Petriello's liability and is granted in part and denied in part with

respect to damages and other relief. Default judgment is denied with respect to Joseph H. Levine

42

MD PC with leave to renew following sufficient service of the Summons and Complaint on Joseph H. Levine MD PC.

Freedom Mortgage's Motion for Summary Judgment against Juliano Petriello (ECF No. 40) is granted with respect to liability and is granted in part and denied in part with respect to damages and other relief.

Freedom Mortgage may file a renewed motion for default judgment as to damages and other relief against Frank Petriello, a renewed motion for default judgment against Joesph H. Levine MD PC, and a renewed motion for summary judgment as to damages and other relief against Juliano Petriello. Any such motions are respectfully referred to Magistrate Judge James M. Wicks for an inquest and a written report and recommendation.

In light of my ruling on Freedom Mortgage's Motion for Summary Judgment, the motion to strike Juliano Petriello's Answer, Affirmative Defenses, and Counterclaims, which is set forth in the Motion for Summary Judgment, is dismissed as moot.


Dated:  Central Islip, New York
        June 20, 2025


            _/s/ Nusrat J. Choudhury_____
            NUSRAT J. CHOUDHURY
            United States District Judge